UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CHARLES D. GIANETTI, M.D., : | |
| Plaintiff, : | |
| : | |
| v. : | Case No: 3:07cv01561 (PCD) |
| : | |
| BLUE CROSS AND BLUE SHIELD OF : | |
| CONNECTICUT, INC., ET AL. : | |
| Defendants. : | |

## RULING ON MOTION TO DISMISS

Plaintiff Charles D. Gianetti, M.D. brought this action against Defendants Blue Cross and Blue Shield of Connecticut, Inc., Anthem Health Plans, Inc., Anthem Insurance Companies, Inc., (collectively, "Defendant Anthem" or "Anthem"), as well as Defendants Samaris Rose ("Rose") and Cynthia Bellamy ("Bellamy"), in Bridgeport Superior Court for state law claims of breach of contract, quantum meruit, unjust enrichment, fraud and misrepresentation, and violations of Connecticut Unfair Trade Practices Act ("CUTPA"). Defendant Anthem removed the action to this Court on the grounds that Plaintiff's claims are preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq. (2000) ("ERISA") and the claims raise substantial federal questions. Defendant Anthem filed a Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated herein, the Motion to Dismiss [Doc. No. 9] is **granted** as to all claims and all Defendants.

### I. BACKGROUND

For purposes of deciding this motion, the following factual allegations are assumed to be true. *See Miree v. DeKalb County*, 433 U.S. 25, 27 n.2 (1977). Plaintiff's explanation of the facts is less than clear, but the Court gathers the following. On March 10, 1999, Plaintiff, a physician in the State of Connecticut, performed reconstructive plastic surgery and other services

on Rose, a minor child at the time of the surgery, who was named as a defendant in Plaintiff's state law complaint. (Compl. Count 1 ¶¶ 1, 5.) Bellamy, also so named, is the mother of Rose. (Compl. Count 1 ¶¶ 3, 4.) As of the date of these medical procedures, Bellamy and Rose were covered by an employer sponsored health benefit plan operated by Anthem and governed by ERISA.[1] According to Plaintiff, Bellamy and Rose signed a statement acknowledging their responsibility for payment of all fees regardless of insurance, and agreed that Plaintiff would not send them a statement of charges until Defendant Anthem paid Plaintiff and completed its review process. (Compl. Count 2 ¶¶ 11, 15.)

Plaintiff subsequently sent Defendant Anthem: (1) a statement of charges for services performed on Rose, in the amount of $7,695; and (2) the patient's assignment of benefits to Plaintiff. (Compl. Count 1 ¶ 6.) Defendant Anthem remitted a payment of $3,019.50 to Plaintiff, stated that it had erroneously remitted a payment to Rose and/or Bellamy, and denied part of Plaintiff's charges as not covered. (Compl. Count 1 ¶¶ 7, 8, 9.) According to the Plaintiff, Defendant Anthem maintains that it made payments to Bellamy and Rose, but Plaintiff states that Bellamy and Rose have denied receiving such payments. (Compl. Count 5 ¶¶ 24, 26, 27.) Furthermore, Plaintiff asserts that a September 8, 2000 statement does not reflect Defendant Anthem's payment to Bellamy and Rose or to Plaintiff. (Compl. Count 4 ¶¶ 24, 25.)

Plaintiff made numerous requests to Anthem for the remaining charges, and sent a statement of amount due to Bellamy and Rose. (Compl. Count 1 ¶¶ 10, 11; Compl. Count 2 ¶ 14.) Plaintiff reports that Bellamy and Rose have refused to pay the amount due to Plaintiff.

---

[1] Defendant Anthem states that the plan in question is an employer sponsored health benefit plan governed by ERISA. (Aff. of Linda Brink ¶¶ 4, 5.) Plaintiff does not dispute this assertion, and the Court accepts it as true for the purposes of this ruling.

(Compl Count 2 ¶ 16.) Despite having stated that Rose's records had been purged from its files, Defendant Anthem's employee subsequently submitted a listing of the claim's disposition. (Compl. Count 5 ¶¶ 30, 31.)

On September 17, 2007, Plaintiff brought this action in Bridgeport Superior Court against Anthem, Rose, and Bellamy. The complaint alleges breach of contract, quantum meruit, and unjust enrichment against all Defendants, and fraud and misrepresentation and violation of CUTPA against Defendant Anthem. Plaintiff prays for monetary damages, costs, interest, and punitive damages.

On October 24, 2007, Defendant Anthem removed the action to this Court stating that removal was appropriate on the grounds that Plaintiff's claims are preempted by ERISA and the claims raise substantial federal questions.[2] (Def. Anthem's Pet. for Removal ¶ 2.) On November 27, 2007, Plaintiff was granted leave for extension of time to respond to the notice of removal, though he did not subsequently file a response. On January 24, 2008, Defendant Anthem filed a motion to dismiss on the grounds that Plaintiff's state law claims are preempted by ERISA. Plaintiff requested and was granted an extension of time until March 14, 2008 to file an objection. On March 17, 2008, without leave from the court, Plaintiff filed a late objection to the

---

[2] Bellamy and Rose never joined Defendant Anthem's Notice of Removal. Defendant Anthem informed the Court that Bellamy and Rose were contacted by Defendant Anthem regarding the Notice of Removal and they took no position on removal. (Def. Anthem's Removal Statement ¶ 5.) Remand to State court is not appropriate on this ground because Bellamy and Rose have waived any objection to removal by their failure to respond. *See Allstate Ins. Co. v. Zhigun*, No. 03 Civ. 10302, 2004 WL 187147, at *3 n.2 (S.D.N.Y. Jan. 30. 2004) (citing *Loftis v. United Parcel Service, Inc.*, 342 F.3d 509, 516-517 (6th Cir. 2003); *Parrino v. FHP*, 146 F.3d 699, 703 (9th Cir. 1998)) ("Failure to comply with the rule of unanimity in a notice of removal, is, unlike lack of subject matter jurisdiction, a procedural defect that is waived thirty days after the notice of removal is filed.").

motion to dismiss. In deference to Plaintiff's *pro se* status,[3] the Court has considered the arguments therein, notwithstanding the late filing.

## II. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) must be decided on "facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Israel Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999). In deciding a motion to dismiss, well-pleaded facts must be accepted as true and considered in the light most favorable to the Plaintiff. *Patane v. Clark*, 508 F.3d 106, 111 (2d Cir. 2007). The issue in deciding a motion to dismiss is "not whether the plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir.1995). The factual allegations made in the complaint "must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1959 (2007). This requires the complaint to contain "enough fact to raise a reasonable expectation that discovery will reveal evidence" of the Plaintiff's claim. *Id.*

## III. DISCUSSION

### A. Jurisdiction

A defendant may only remove an action to district court if the plaintiff could have

---

[3] While *pro se*, Plaintiff is in fact an experienced litigator, as he has filed almost 200 cases similar to this one. *See Gianetti v. Siglinger*, No. CV980349830, 2004 WL 1098443, at *4 (Conn. Super. Ct. Apr. 26, 2004). The State of Connecticut has also brought suit against Plaintiff for violations of CUTPA, alleging balance billing of clients in situations similar to those involved here. Complaint, *State of Connecticut v. Gianetti*, No. CV-04-4033348-S (Conn. Super. Ct. Jul. 21, 2004).

brought the action in the district court in the first instance. *See* 28 U.S.C. § 1441(a) (2002) ("[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States."). Among the cases over which federal courts have original jurisdiction are those cases "arising under" federal law. 28 U.S.C. § 1331 (1980). "It is long settled law that a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987) (citing *Gully v. First Nat'l Bank*, 299 U.S. 109 (1936)). Generally, the plaintiff is "master" of the complaint and the defendant's federal defense to a state law complaint does not provide grounds for removal to district court. *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913); *Gully*, 299 U.S. at 116. A major exception to the well-pleaded complaint rule is that "Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Metropolitan Life Ins. Co.,* 481 U.S. at 63-64. ERISA is one such area. A cause of action within the scope of the civil enforcement provisions of ERISA § 502(a) [29 U.S.C. § 1132(a)] is "necessarily federal in character by virtue of the clearly manifested intent of Congress" and is removable to federal court. *Metropolitan Life Ins. Co.*, 481 U.S. at 66-67. Despite the absence of any federal issue on the face of Plaintiff's complaint, this case falls within the scope of ERISA's civil enforcement provisions and, therefore, was properly removed to this Court. This Court, as a result, has jurisdiction over this case.

    **B.**    **ERISA Preemption of State Law Claims Brought by the Assignee of Benefits**

It is uncontested that Plaintiff is a health benefit plan beneficiary by way of Bellamy and Rose's assignment of rights to Plaintiff. (Def. Mot to Dismiss 10 n.2; Pl. Obj. to Mot. to Dismiss

5

6.) Plaintiff contends, however, that as a third-party healthcare provider, as opposed to a plan participant, his state law claims cannot be preempted by ERISA because his claims do not relate to the plan's administration. (Pl.'s Mot. to Dismiss 5.) Plaintiff argues that as a third-party health care provider, he may bring claims in his capacity as an assignee and in his own right, concurrently. (*Id.* at 6).

A participant or beneficiary is empowered under ERISA's civil enforcement scheme to bring an action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B) (2006). Accordingly, the Second Circuit has held that third-party health care providers, as assignees of beneficiaries, have standing to bring suit under ERISA claiming their assigned benefits. *I.V. Servs. of Am., Inc. v. Trs. of Am. Consulting Eng'rs Council Ins. Trust Fund*, 136 F.3d 114, 117 n.2 (2d Cir.1998) ("[T]he assignees of beneficiaries to an ERISA-governed insurance plan have standing to sue under ERISA."). Given that Plaintiff had standing to bring suit under ERISA, Plaintiff's state law claims are subject to ERISA preemption, if appropriate. *See, e.g.*, *Weisenthal v. United Health Care Ins. Co. of N.Y.*, Nos. 07 Civ. 1175, 07 Civ. 0945, 2007 WL 4292039, at *4 (S.D.N.Y. Nov. 29, 2007) (holding that ERISA preempted the plaintiff heath care provider's state law claims after finding the plaintiff had standing to sue).

## C. The Preemption Clause

In enacting ERISA,

> "Congress sought principally to address concerns that lack of uniformity and the administrative and financial burdens of compliance with conflicting state laws might work to the detriment of plan beneficiaries, and reduce the willingness of

6

employers to adopt such plans, or lead to a reduction in the level of benefits furnished."

*Plumbing Indus. Bd. v. Howell Co.*, 126 F.3d 61, 66 (2d Cir. 1997) (citing *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 142 (1990)). Thus, Congress's principle goal was to "protect . . . the interests of participants in employee benefit plans and their beneficiaries." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (quoting 29 U.S.C. § 1001(b)). To ensure the uniformity of benefits law, ERISA contains an express preemption clause, providing, with some exceptions, that ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. 29 U.S.C. § 1144(a) (2006). *See also Howell*, 126 F.3d at 66.

To find ERISA preemption, however, the moving party must defeat the presumption that Congress did not intend to supersede state law. *Howell*, 126 F.3d at 66-67. In considering whether Congress intended preemption, the Supreme Court noted that "if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), [29 U.S.C. § 1132(a)(1)(B),] and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B)." *Davila*, 542 U.S. at 210. The Court must determine, therefore, "whether plaintiff 'at some point in time, could have brought [his] claim under ERISA § 502(a)(1)(B)' and if so, whether any 'independent legal duty is implicated by [defendants'] actions." *Curcio v. Hartford Fin. Servs. Group*, 469 F. Supp. 2d 18, 22 (D. Conn. 2007) (quoting *Davila*, 542 U.S. at 210). Further, "[i]f the alleged liability is derived from or dependent upon the existence and administration of an ERISA-regulated benefit plan, then the state-law claims are not 'entirely

7

independent of the federally regulated contract itself,' and are therefore preempted." *Id.* (quotation omitted). State laws are not independent of the ERISA plan if the interpretation of the terms of the benefits "forms an essential part of" the plaintiff's claims and the defendant's alleged liability. *Davila*, 542 U.S. at 213.

**D.      Counts One, Three, and Four: Breach of Contract, Quantum Meruit, and Unjust Enrichment as to Defendant Anthem**

Defendant Anthem contends that all of Plaintiff's claims are preempted by ERISA because of courts' "expansive construction of ERISA's preemption clause," because the claims relate to the ERISA plan, and because precluding preemption would undermine ERISA's comprehensive civil enforcement scheme. (Def.'s Mot. to Dismiss 3, 10.) In reply, Plaintiff argues that his breach of contract claim is not preempted by ERISA because ERISA's civil enforcement provisions authorize him to bring such a claim. (Pl.'s Obj. to Mot. to Dismiss 2.)

According to the Supreme Court's decision in *Davila*, "if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B)." *Davila*, 542 U.S. at 210. Plaintiff's breach of contract, quantum meruit, and unjust enrichment state law claims are all interrelated for purposes of the *Davila* analysis. For these state law claims, the first *Davila* factor for preemption is satisfied because, as previously discussed, Plaintiff could have brought his claim under ERISA. As a plan beneficiary, pursuant to his assigned rights, Plaintiff had standing to recover benefits under ERISA. *Curcio v. Hartford Fin. Servs. Group*, 469 F. Supp. 2d 18, 23 (D. Conn. 2007).

The second *Davila* factor is whether defendant's actions implicate any legal duty independent of the ERISA plan. Plaintiff's breach of contract, quantum meruit, and unjust enrichment claims are "derived from or dependent upon the existence and administration of" the ERISA plan. *Curcio*, 469 F. Supp. 2d at 23 (quotation omitted). Plaintiff alleges that Defendants have received the value of his services and have failed to pay the amount due for the services. (Compl. Count 3 ¶¶ 29, 30.) Recovery of benefits under the ERISA plan requires an initial determination of the nature and extent of Plaintiff's benefits under the plan. Plaintiff's benefits under the ERISA-regulated plan dictate both the value of the services and, as a result, the amount due for those services. *Curcio,* 469 F. Supp. 2d at 23. "[I]nterpretation of the terms of [plaintiff's] benefit plan[] forms an essential part of [his state law claim], and . . . liability would exist here only because of [defendant's] administration of ERISA-regulated benefits plans. [Defendant's] potential liability under [state law] in [this case], then, derives entirely from the particular rights and obligations established by the benefit plans." *Davila*, 542 U.S. at 213. Plaintiff's breach of contract, quantum meruit, and unjust enrichment claims, thus, are "not entirely independent of the federally regulated contract itself." *See Curcio*, 469 F. Supp. 2d at 23 (citing *Davila*, 542 U.S. at 210). Rather, Plaintiff brings suit to recover payments he alleges were promised or due to him under the ERISA plan.

In *Weisenthal v. United Health Care Insurance Co. of New York*, the Southern District of New York decided a similar case in which the plaintiff brought various state law claims seeking damages for the defendant's decision not to cover certain medical procedures under its ERISA-regulated healthcare insurance plans. 2007 WL 4292039, at *1, 6 (S.D.N.Y. Nov. 29, 2007). The Southern District of New York explained that all of the claims were grounded in the ERISA-

regulated plan and thus the defendant's actions did not implicate an independent legal duty.

> "Plaintiffs allege fraud insofar as Defendants [refused to provide] reimbursement for procedures that should have been reimbursed. By failing to reimburse patients for procedures that should have been reimbursed, Plaintiffs allege that Defendants were unjustly enriched, and that Plaintiffs are now entitled to the reasonable value of the services rendered in quantum meruit. By refusing to reimburse patients, Plaintiffs allege that Defendants infringed on the contractual relationship established in the Agreements . . . . The conduct of which Plaintiffs complain, however, is nothing more than the manner by which Defendants decided not to reimburse patients. Such was the same situation confronted by the *Davila* Court, and the same result obtains here: Plaintiffs' common law claims seek 'only to rectify a wrongful denial of benefits promised under ERISA-regulated plans and do not attempt to remedy any violation of a legal duty independent of ERISA.'"

*Id.* at *6 (quoting *Davila*, 542 U.S. at 213) (internal citations omitted). *See also Berry v. MVP Health Plan, Inc.*, No. 1:06-CV-120, 2006 WL 4401478, at *8 (N.D.N.Y. Sept. 30, 2006) (holding that ERISA preempted the plaintiff's unjust enrichment claim because "[c]onsideration of this claim necessarily entails an examination of the [ERISA] plan which governs each of plaintiffs' claims, as assignees, for benefits.").

For the reasons stated herein, Plaintiff's claims of breach of contract, quantum meruit, and unjust enrichment as to Defendant Anthem are **dismissed**.

> **E.     Counts Five and Six: Fraud**, **Misrepresentation, and Connecticut Unfair Trade Practices Act (CUTPA) Violation as to Defendant Anthem**

Defendant Anthem contends that ERISA preempts Plaintiff's fraud and misrepresentation claims. (Def.'s Mot. to Dismiss 1; Def's Reply in Supp. of Mot. to Dismiss 1-6.) Plaintiff argues that ERISA does not preempt claims when the "deception only incidentally concerned" the benefits, or because fraud is of special interest to the state. (Pl.'s Obj. to Mot. to Dismiss 3-4.) Plaintiff also suggests that because the misrepresentation claim would exist regardless of ERISA coverage, it is not preempted. (*Id.* at 6.)

10

The Second Circuit has held that "ERISA preempts state common law claims of fraudulent or negligent misrepresentation when the false representations concern the existence or extent of benefits under an employee benefit plan." *DaPonte v. Manfredi*, 157 Fed. Appx. 328, 330 (2d Cir. 2005) (quotation omitted). In *DaPonte*, the Second Circuit held that ERISA did not completely preempt plaintiffs' state law claims of negligent and fraudulent misrepresentation when the defendant promised medical coverage upon a certain date and subsequently failed to provide the coverage, but made no "misrepresentations regarding the existence or extent of benefits *under an employee benefit plan*." *Id.* at 330-31 (internal quotation omitted) (emphasis in original). The Second Circuit distinguished *Cicio v. Does 1-8*, 321 F.3d 83, 92-93 (2d Cir. 2003), in which ERISA preempted a claim for state law malpractice when a Defendant misrepresented "crucial terms in the plan . . . which materially affected the extent of plaintiff's coverage under the plan." *DaPonte*, 157 Fed. Appx. at 330.

In *Geller v. County Line Auto Sales, Inc.*, on which Plaintiff relies, the Second Circuit held that ERISA did not preempt a state law fraud claim. 86 F.3d 18, 22-23 (2d Cir. 1996). There, the plaintiffs alleged that the defendants fraudulently misrepresented the employment status of an individual and, in reliance on the misrepresentation, the plaintiffs paid benefits on her behalf. *Id.* at 19-20. Unlike in this case, the claim in *Geller* did not "rely on the [] plan's operation or management." *Id.* at 22-23. Instead, "[t]he plan [in *Geller*] was only the context in which this garden variety fraud occurred." *Id.* Plaintiff alleges that Defendant Anthem fraudulently concealed and misrepresented payments and its denial of review of claims made under the ERISA plan. (Compl. Count 5 ¶ 32.) Assuming the facts alleged in the complaint, Anthem's fraud and misrepresentation concern both the existence and extent of benefits under

11

the plan and involve the plan's management. The denial of charges, the alleged lack of timely review of the denial of charges, and the alleged purging of the patient's records from Anthem's files (Compl. Count 5 ¶¶ 28-32) are all closely related to the manner in which Anthem manages the plan and have substantial impact on Plaintiff's benefits under the plan. These are not akin to the garden variety fraud in *Geller*. ERISA, therefore, preempts Plaintiff's fraud and misrepresentation claims, and these claims are **dismissed** as to Defendant Anthem.

Plaintiff's Connecticut Unfair Trade Practices Act (CUTPA) claim is similarly preempted by ERISA. Plaintiff alleges that the acts of fraud and misrepresentation constitute violations of CUTPA. (Compl. Count 6 ¶ 34.) Under controlling precedent, ERISA preempts CUTPA claims. S*ee, e.g.*, *Levine v. Hartford Life Ins. Co.*, No. Civ. A. 302CV81, 2002 WL 1608330, at *2 (D. Conn. June 28, 2002); *Krass v. Connecticare, Inc.*, No. Civ. 3:96CV2565, 1998 WL 26409, at *5 (D. Conn. Jan. 14, 1998). The reasoning supporting ERISA preemption of fraud and misrepresentation claims extends to CUTPA claims. The alleged unfair and deceptive acts are closely related to the operation of the plan and have a substantial impact on the existence of and the extent to which Defendant Anthem owes payments to Plaintiff under the plan. Therefore, Plaintiff's CUTPA claims as to Defendant Anthem are also **dismissed**.

### F. The "Savings Clause"

Plaintiff does not argue that his state law claims fall within ERISA's "savings clause," and the Court agrees with Defendant Anthem's contention that the claims do not fall within the savings clause. ERISA does not preempt state laws falling within its "savings clause," 29 U.S.C. § 1144(b)(2)(B). The savings clause provides that ERISA plans are not exempt from state laws "regulat[ing] insurance companies, insurance contracts, banks, trust companies, or investment

companies." 29 U.S.C. § 1144(b)(2)(B) (2006).

The Supreme Court held that a court should consider two factors in determining whether a state law regulates insurance within the meaning of the savings clause. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 50 (1987). First, the court must "consider the 'common-sense view' of the term 'regulates insurance' which suggests that 'in order to regulate insurance, a law must not just have an impact on the insurance industry, but must be specifically directed toward that industry.'" *Howard v. Gleason Corp.*, 901 F.2d 1154, 1158 (2d Cir. 1990) (emphasis omitted) (quoting *Pilot Life*, 481 U.S. at 50). Second, in interpreting the savings clause, the court should by guided by judicial interpretation of "the business of insurance" under the McCarran-Ferguson Act, 15 U.S.C. § 1011, et seq. *Pilot Life*, 481 U.S. at 48. Under the McCarran-Ferguson Act, courts determine, "[f]irst, whether the [state law] has the effect of transferring or spreading a policyholder's risk; second, whether the [state law] is an integral part of the policy relationship between the insurer and the insured; and third, whether the [state law] is limited to entities within the insurance industry." *Id.* at 48-49 (emphasis omitted).

Under the first consideration, Plaintiff's state law claims of breach of contract, quantum meruit, unjust enrichment, fraud, misrepresentation and violations of CUTPA are not directed specifically at the insurance industry, but rather are laws of general application. *See, e.g.*, *UNUM Life Ins. Co. of Am. v. Ward*, 526 U.S. 358, 377 n.7 (1999) (noting that a common law cause of action for bad-faith breach of contract was not "specifically directed to the insurance industry and therefore not saved from ERISA preemption"); *see also Bailey-Gates v. Aetna Life Ins. Co.*, 890 F.Supp. 73, 79 (D. Conn. 1994) ("[I]t is well-established in this district that ERISA's savings clause does not except [] CUTPA . . . claims from preemption.").

13

Similarly, Plaintiff's state law claims do not satisfy the McCarren-Ferguson Act criteria, and are thus not saved by the savings clause. None of the state law claims presented here transfer or spread policyholder's risk, constitute an integral part of the policy relationship between the insurer and the insured, nor are the laws limited to entities within the insurance industry.

G.     **Supplemental Jurisdiction Over Claims Against Bellamy and Rose**

Plaintiff contends that his state law breach of contract, quantum meruit, and unjust enrichment claims against Bellamy and Rose are not preempted by ERISA. (Obj. to Mot. to Dismiss 1.) Indeed, Plaintiff's state law claims against Bellamy and Rose are not preempted by ERISA because they improper defendants to an ERISA suit. The Second Circuit has held that "in a recovery of benefits claim, only the plan and the administrators and trustees of the plan in their capacity as such may be held liable." *Crocco v. Xerox Corp.*, 137 F.3d 105, 107 (2d Cir. 1998) (quoting *Leonelli v. Pennwalt Corp.*, 887 F.2d 1195 (2d Cir. 1989)). Plaintiff does not suggest that Bellamy and Rose are administrators nor trustees of the plan, and therefore, as plan participants, Bellamy and Rose are improper defendants to this ERISA suit.

This Court has supplemental jurisdiction over Plaintiff's state law claims against Bellamy and Rose. "In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." 28 U.S.C. § 1367(a) (1990). Accordingly, "28 U.S.C. § 1367(a) . . . makes pendent party jurisdiction possible where the claim in question arises out of the same set of facts that give rise to an anchoring federal question claim

against another party." *Kirschner v. Klemons*, 225 F.3d 227, 239 (2d Cir. 2000); *see also City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 164 (1997) (holding state law claims form part of the same case if they and the federal claims "derive from a common nucleus of operative fact").

Plaintiff's claims against Defendants Anthem, Bellamy and Rose arise from the same operative facts. Plaintiff could not have a claim against Anthem without the assignment of Bellamy and Rose's ERISA-governed rights and benefits to Plaintiff, nor could he have a claim against Bellamy and Rose without Anthem's denial of charges. Plaintiff's claims against Anthem, Bellamy, and Rose all arise out of their alleged failure to compensate Plaintiff for the services performed on March 10, 1999. (Compl. Count 1 ¶¶ 5, 11; Compl. Count 2 ¶ 16.) Since Plaintiff's state law claims against Bellamy and Rose derive from the same set of facts as his federal claims against Anthem, the Court has supplemental jurisdiction over Plaintiff's state law claims against Bellamy and Rose.

### H. Count Two, Three, and Four: Breach of Contract, Quantum Meruit, and Unjust Enrichment as to Bellamy and Rose

Plaintiff alleges that minor child Rose and her mother, Bellamy, had signed a contract with Plaintiff stating that they were "responsible for the payment of all fees [in connection to the March 10, 1999 medical care] regardless of insurance." He further alleges that they breached the contract by failing to remit payment for the services he performed after Anthem denied payment and completed its review process. (Compl. Count 2 ¶¶ 12-17.) Plaintiff also makes claims against Bellamy and Rose for quantum meruit and unjust enrichment.

Bellamy and Rose are not liable under this contract. Connecticut General Statutes §

15

20-7f(b) provides: "It shall be an unfair trade practice in violation of Chapter 735a [Conn. Gen. Stat. § 42-110a, et seq.] for any health care provider to request payment from an enrollee, other than a co-payment or deductible, for medical services covered under a managed care plan." Furthermore, Plaintiff has been instructed by Connecticut state courts that "he cannot engage in balance billing for covered services." *Gianetti v. Siglinger*, No. CV980349830, 2004 WL 1098443, at *4 (Conn. Super. Ct. Apr. 26, 2004); *see also Gianetti v. Siglinger*, 900 A.2d 520, 524 (Conn. 2006) ("[P]laintiff was well aware that the practice [of balancing billing] was prohibited through court decisions and statutes."). Therefore, with respect to his claims against Bellamy and Rose, Plaintiff has failed to state a cause of action upon which relief can be granted. Plaintiff's claims against Bellamy and Rose may also be time-barred, given that the medical procedures took place in March 1999 and Plaintiff did not file his complaint until September 2007.[4] For the reasons stated herein, Plaintiff's claims against Defendants Bellamy and Rose are **dismissed** pursuant to Federal Rule of Civil Procedure 12(b)(6).

### I. Plaintiff's Request to Amend the Complaint

Plaintiff requests that the Court consider his claims as if they had been made under ERISA or, in the alternative, grant him leave to amend his complaint. (Pl.'s Obj. to Mot. to Dismiss 3.) Defendant Anthem objects to this request. (Def.'s Reply in Supp. of Mot. to Dismiss 7 n.1.) The Court declines to grant Plaintiff leave to amend his complaint, nor will the Court consider ERISA claims that Plaintiff has not pled. When, as is the case here, a party cannot amend the complaint as a matter of course, the party "may amend its pleading only with

---

[4] The applicable Connecticut statute of limitations for breach of contract, quantum meruit, and unjust enrichment is six years. Conn. Gen. Stat. § 52-576(a). While Plaintiff's Complaint fails to state the date of the alleged contract, it seems reasonable to assume that it was signed on or about the date of the procedures to which it relates.

16

the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The Court's discretion is properly exercised to deny leave to amend in the presence of an "apparent or declared reason," including "undue delay, bad faith...on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Court finds that such factors are present here.

As noted previously, Plaintiff has filed numerous unsuccessful suits against insurers and former patients, raising claims similar to those in this suit. *See Gianetti v. Siglinger*, 900 A.2d 520, 524 (Conn. 2006) ("[T]he trial court noted other litigation arising out of the plaintiff's practice of balance billing and concluded that the plaintiff was well aware that the practice was prohibited through court decisions and statutes."). *See also Gianetti v. Greater Bridgeport Individual Practice Ass'n*, 2005 WL 2078546, n.15 (Conn. Super. July 21, 2005) ("[T]he plaintiff's tactics in filing multitudinous lawsuits, most of which have proven to have no merit, overburden the public courts to further the plaintiff's selfish interests and amount to an abuse of the judicial process."). The appearance of bad faith on the part of Plaintiff in the filing of this suit makes the Court disinclined to permit him to amend his Complaint. Furthermore, the incidents underlying Plaintiff's allegations against Anthem took place between 1999 and 2001, and thus it appears that Plaintiff's claims against Anthem, raised in 2007, are likely time-barred, which would render amendment futile.[5] Plaintiff's request for leave to amend his Complaint is denied.

---

[5] "As ERISA does not prescribe a limitations period for actions under § 1132, the controlling limitations period is that specified in the most nearly analogous state limitations statute." *Miles v. N.Y. State Teamsters Conference Pension & Ret. Plan*, 698 F.2d 593, 598 (2d Cir. 1983). Here, the applicable statute of limitations are those under Connecticut state law. *See Cole v. Travelers Ins. Co.*, 208 F. Supp. 2d 248, 252 & n.2 (D. Conn. 2002). The applicable Connecticut statutes of limitations are six years for breach of contract, quantum meruit, and unjust enrichment, Conn. Gen. Stat. § 52-576(a); three years for fraud and misrepresentation, Conn. Gen. Stat. § 52-577; and three years for CUTPA violations, Conn. Gen. Stat. § 42-110g(f).

For the reasons stated herein, the Motion to Dismiss [Doc. No. 9] is **granted** as to all parties and claims. The Clerk shall close the case.

SO ORDERED.

Dated at New Haven, Connecticut, May  2 , 2008.

/s/
Peter C. Dorsey, U.S. District Judge
United States District Court